## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER HOYT GODSEY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:23-cv-00041-LCB** |
| ) | |
| **KILOLO KIJAKAZI, as Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration, An Independent** ) | |
| **Agency of the United States of** ) | |
| **America,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Christopher Hoyt Godsey seeks judicial review of the final decision by the Social Security Administration's Commissioner to deny his claim for continued disability benefits. 42 U.S.C. § 405(g). Having closely examined the record, the Court **AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

### A.   Standard of Review

A court's only task in reviewing a Social Security appeal is to determine whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1178 (11th Cir. 2011). Substantial evidence "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

Thus, courts reviewing an appeal from a denial of disability benefits may not "decide the facts anew, make credibility determinations, or re-weigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (cleaned up). Rather, a reviewing court *must* affirm the Commissioner's decision if the denial is supported by substantial evidence, even if the preponderance of the evidence weighs against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### B.    Procedural History

After experiencing a femoral fracture that healed improperly, Godsey was approved for disability insurance benefits on November 25, 2015. (Doc. 8-3 at 14). Four years later, the Social Security Administration determined that Godsey was no longer disabled as of August 1, 2019. (*Id.* at 12). After Godsey requested reconsideration, the administrative determination of ineligibility was upheld on January 25, 2021. (Doc. 8-5 at 64-66). Following those administrative denials, Godsey requested a hearing before an Administrative Law Judge, who held a hearing on January 11, 2022. (Doc. 8-3 at 12). He was represented by a non-attorney representative at that hearing, which also included testimony from an impartial Vocational Expert, Michelle Perry. (*Id.*) Following the hearing, the ALJ issued a

2

decision confirming that Godsey has not been disabled since August 1, 2019. The Commissioner's decision became final after the Social Security Appeals Council declined to review the ALJ's decision. (*Id.* at 2.) Having exhausted his administrative remedies, Godsey filed a timely appeal in this Court.

## C.    The Social Security Disability Framework

Once an applicant receives a disability determination, "a finding of a disability is not permanent." *Thomas v. Comm'r of Soc. Sec.*, 841 F. App'x 128, 129 (11th Cir. 2020). Instead, a claimant's "continued entitlement to [disability] benefits must be reviewed periodically." 20 C.F.R. § 404.1594(a). In conducting that review, the Social Security disability framework requires an ALJ to ask a series of questions to determine whether a claimant remains disabled:

(1)    Is the claimant engaged in substantial gainful activity?

(2)    Does the claimant have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability is ongoing and the inquiry ends.

(3)    Has the claimant experienced medical improvement? If so, the analysis proceeds to Step 4. If not, the analysis goes to Step 5.

(4)    If so, does the medical improvement affect the claimant's ability to work?

(5)    Does an exception to medical improvement apply?

(6)    If the claimant has experienced medical improvement that increased the claimant's capacity to work, or an exception applies, are their current impairments severe?

(7)    If the claimant's impairment is severe, what is the claimant's residual functional capacity? Given that RFC, can the claimant perform past relevant work?

(8)   Is the claimant able to perform any other work within the national economy?

20 C.F.R. §§ 404.1594(f)(1)-(8).

Before conducting the "past relevant work" and national economy analysis required in Steps 7 and 8, the ALJ must determine the claimant's residual function capacity ("RFC"), which is the claimant's ability to perform work of any kind despite "all . . . medically determinable impairments" the ALJ is aware of, "including . . . medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2).

Once the claimant's RFC is established, the ALJ compares the claimant's RFC to the demands of their past relevant work and any other work in the national economy. If a claimant can perform past relevant work, or the Commissioner can show that the claimant is able to perform any other work in the national economy, then the claimant is no longer disabled. 20 C.F.R. §§ 404.1594(f)(7), (8).

### D.   The ALJ's Analysis

Although Godsey challenges the Commissioner's decision on two separate fronts, the ALJ's opinion followed the required analysis to the letter. (*See* Doc. 8-3 at 12-13.) At Step 1, the ALJ found that Godsey had not engaged in substantial gainful activity from his initial determination through the time of the decision. (*Id.* at 14.)

At Step 2, the ALJ found that none of Godsey's impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Godsey initially sought disability benefits because of a fractured femur that refused to heal, but as the ALJ noted, "the evidence does not show that [Godsey] requires an assistive device or that he is unable to use one or both upper extremities to sustain work related activities" as of August 1, 2019. (Doc. 8-3 at 14). Further, although Godsey has sought treatment for alcohol use disorder and bipolar disorder, including symptoms such as "mood swings, insomnia, racing thoughts, nightmares, and anxiety," none of Godsey's "determinable mental impairments cause . . . more than 'mild' limitation[s]." (*Id.*)

At Step 3, the ALJ determined that Godsey medically improved by August 1, 2019, because of a successful "surgery to repair the left femoral shaft non-union," after which Godsey "reported doing well and stated his pre-operative pain of the thigh was completely gone." (*Id.* at 16).

At Step 4, the ALJ found that Godsey's medical improvement allows him to work because he "no longer ha[s] an impairment or combination of impairments that met or medically equaled the same listing(s)," as he did at the time of his initial disability determination. (*Id.*) The ALJ did not address Step 5 since there was medical improvement and the improvement was related to Godsey's ability to work. 20 C.F.R. §§ 404.1594(f)(3)-(5).

At Step 6, the ALJ found that, although Godsey has experienced medical improvements, his combined conditions still constitute a "severe impairment." (*Id.*) The ALJ found the most significant impairments were Godsey's left lower limb fracture and degenerative disc disease. (*Id.* at 16). In addition, the ALJ considered Godsey's documented medical history of right thumb and finger pain and stiffness, obesity, left eye injury (which limits his vision), and arthritis in the bilateral knees. (*Id.* at 17).

That brings us to Step 7. After "careful consideration of the entire record," the ALJ concluded that Godsey was no longer disabled and possessed the RFC to perform "light work," with some additional limitations:

> [S]ince August 1, 2019, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can occasionally lift and/or carry, including upward pulling, 20 pounds, and can frequently lift and/or carry, including upward pulling, ten pounds. The claimant can sit for six hours in an eight-hour workday with normal breaks, and stand and/or walk for six hours in an eight-hour workday, with normal breaks. The claimant's ability to push and/or pull, including operation of hand controls is unlimited up to the lift and carry restriction of 20 and ten pounds. The claimant's ability to use foot controls is limited to occasional. The claimant can frequently climb ramps and stairs. He can occasionally stoop, kneel, and crouch, but should never crawl. The claimant should never climb ladders, ropes or scaffolds. He should never work at unprotected heights, or around dangerous machinery. He should never work on wet, slippery, icy surfaces, or uneven terrain. He should never reach overhead bilaterally. The Case 5:23-cv-00041-LCB Document 16

Filed 07/19/23 Page 3 of 26 4 claimant should never work with vibration tools such as power tools or air compression tools.

(Doc. 8-3 at 17).

In supporting this RFC determination, the ALJ found that although Godsey's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not generally consistent with the evidence." (*Id.* at 19.)

First, the ALJ noted that Godsey "has not generally received the type of medical treatment one would expect for a totally disabled individual," and that surgical intervention and medications "have been somewhat effective in controlling the claimant's symptoms." (*Id.* at 19). Further, medical evaluations revealed that Godsey "had 5/5 strength in both upper extremities and normal sensation," without "loss of sensation, decreased reflexes, or reduced strength," which "support[s] . . . the residual functional capacity conclusion." (*Id.*)

Second, Godsey alleged (at various points) that he "is not able to stand for more than a couple [of] minutes because his hip and knee go out," that he has "difficulty sleeping at night due to pain," and that he no longer drives. (*Id.* at 18). He has also alleged that he is "unable to use his right hand," and requires help from his parents to do laundry, cook, and dress himself. (*Id.*)

However, as the ALJ noted, Godsey's complaints are inconsistent with the medical evidence, and the ALJ sufficiently and "systematically articulated his reasons for rejecting [Godsey's] subjective complaints" based on the evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Several inconsistencies noted by the ALJ are as follows:

- Neither Godsey nor his wife reported difficulty using his hands on a 2018 function report, "which is inconsistent with [Godsey's later] statements regarding his complete inability to use his right hand." (Doc. 8-3 at 19).

- Despite Godsey's allegations of his physical limitations, examinations show that although Godsey has a "left limp and decreased range of motion," imaging of the hips shows "screw and rod fixation hardware" without acute complications, nor is there any record of "loss of sensation, decreased reflexes, or reduced strength." (*Id.*)

- Despite reporting significant neck and lower back pain, as well as headaches, "manual motor testing showed 5/5 strength in both upper extremities and normal sensation," and Godsey "reported improvement in his headaches" in May 2019 following a successful anterior cervical diskectomy and fusion. (*Id.* at 20). Additionally, "at times" his providers "noted that his back pain was stable." (*Id.*)

- Although Godsey claims that he has used a prescribed cane for six years and is also prescribed a walker, the ALJ found that "the record does not document a prescription for a cane or walker, nor does it describe circumstances for which it would be needed." (*Id.* at 19, 20).

Finally, the ALJ reviewed medical opinion evidence and prior administrative findings. The ALJ first reviewed the opinion of a state agency medical consultant who concluded that Godsey "was limited to work at the sedentary exertional level."

8

(*Id.* at 21). However, the ALJ gave this opinion "minimal weight," because it was "inconsistent with the evidence of record," and because the expert's opinion was obtained in May 2019 without the benefit of the "evidence available at the hearing level." (*Id.*) The ALJ also declined to give significant weight to a third-party statement provided by Godsey's wife "because, when compared to objective medical findings, [her] report tends to overstate the degree of limitation that could reasonably be expected to arise from the documented objective findings." (*Id.* at 21-22). Lastly, the ALJ rejected the results of a consultative examination conducted in 2015 because the examination took place "more than four years prior to the relevant period." (*Id.* at 22).

Based on that analysis, the ALJ at Steps 7 and 8 determined that although Godsey is unable to perform his former work in construction (*id.*), he is "capable of . . . work that exist[s] in significant numbers in the national economy," despite his limitations, which is supported by the evidence on the record and the testimony of the Vocational Expert. (*Id.* at 23). As a result, the ALJ concluded that "[a] finding of 'not disabled' is therefore appropriate under the [Social Security disability] framework." (*Id.*)

## II.    DISCUSSION

Godsey contends that the Commissioner's decision is flawed for three reasons. Having closely reviewed the record, however, the Court does not find Godsey's arguments persuasive.

First, Godsey argues that the ALJ erred in concluding that Godsey's subjective testimony was inconsistent with his medical treatment. (Doc. 16 at 19). That claim fails because the ALJ's finding was clearly articulated and supported by substantial evidence. In a similar vein, Godsey next argues that the ALJ erred in concluding that Godsey's daily activities were inconsistent with his subjective testimony. That argument fails for the same reason. Finally, Godsey alleges that the ALJ improperly gave little weight to the opinion of a state medical consultant. However, that claim fails because the ALJ properly discounted Dr. Chastain's opinion according to Social Security's required consistency analysis.

### A.    The ALJ properly concluded that Godsey's alleged symptoms and his medical treatment were inconsistent.

Godsey first claims that the ALJ's consideration of surgical interventions was not supported by substantial evidence. (Doc. 16 at 16). This is so, according to Godsey, because the ALJ "did not discuss [his] need for a second neck surgery" or the fact that he was "learning to use his left hand instead of his right hand." (*Id.* at 16). This argument fails because the Court may not re-weigh the evidence and is

limited to determining whether the Commissioner's decision is supported by substantial evidence.

"If an ALJ discredits a claimant's testimony, the ALJ's credibility determination must be reflected on the record . . . [and a] credibility finding that is clearly articulated and supported by substantial evidence will not be disturbed." *Turner v. Soc. Sec. Admin., Comm'r*, 2022 WL 842188, at *2 (11th Cir. 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). As already discussed, the ALJ sufficiently articulated the reasons underlying his credibility determination, supported by substantial evidence in the record. *See, e.g.*, (Doc. 8-3 at 19).

The ALJ considered and rejected the claim that Godsey has difficulty using his right hand because "[n]either Godsey or his wife reported difficulty using his hands on a 2018 function report, "which is inconsistent with [Godsey's later] statements regarding his complete inability to use his right hand." (Doc. 8-3 at 19). As for the alleged second neck surgery, the ALJ explicitly notes Godsey has undergone two neck surgeries, but that Godsey provided no records documenting this second neck surgery. (Doc. 8-3 at 18; Doc. 17 at 16).

Godsey also claims that his medication prescriptions show that his pain was not successfully managed. (Doc. 16 at 16-17). Again, this Court is not permitted to re-weigh the evidence, and even if it were, the Commissioner correctly points out that Godsey "often told his providers that his medications and dosages were effective

in relieving his pain and his providers noted his back pain was stable." (Doc. 17 at 11). Furthermore, the ALJ expressly considered evidence related to Godsey's treatment and medications that caused work-related limitations and included them in his RFC determination. *See, e.g.*, (Doc. 8-3 at 18).

**B.     The ALJ's finding that Godsey's daily activities were inconsistent with his subjective testimony was supported by substantial evidence.**

Godsey next argues the ALJ's determination that Godsey's subjective testimony was inconsistent with his daily activities was not supported by substantial evidence. Godsey contends when the "entire record is considered, [his] functioning is consistent with being unable to do substantial gainful activity." (Doc. 16 at 21-22). Yet this argument misconstrues the appropriate standard of review.

As said at the outset, this Court may not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[ ] the evidence," *Moore*, 405 F.3d 1208, 1211 (11th Cir. 2005), and the Court declines Godsey's invitation to do so here. Rather, "under a substantial evidence standard of review, [the Claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

Godsey has not done so here. To the contrary, the ALJ's decision was based on a close examination of the *entire* record, not just the discrepancies between

Godsey's testimony and the medical evidence. (Doc. 8-3 at 16-17, 19-21). And rather than ignore Godsey's testimony altogether, the ALJ expressly considered all the "allegations of limitation" that were "consistent with the evidence [and] accommodated them in the . . . residual functional capacity" determination. (Doc. 8-3 at 20).

### C.     The ALJ's decision to give little weight to Dr. Chastain's opinion was proper.

Finally, Godsey contends that "the ALJ erred in determining" that state medical consultant "Dr. [Samuel] Chastain's medical [opinion] was entitled to little evidentiary weight." (Doc. 16 at 25). As the Commissioner correctly points out, this argument stumbles out of the gate because Godsey relies on the wrong standard for evaluating medical opinion evidence. (Doc. 17 at 17).

Godsey claims that the ALJ erred because his decision is inconsistent with the standards articulated in 20 C.F.R. § 404.1520c. (Doc. 16 at 23-24). Yet that standard only applies to claims filed on or after March 27, 2017, as indicated in the title of the regulation itself, and Godsey filed his disability claim in 2015. (Doc. 8-3 at 14). Instead, the pre-2017 standard applies. 20 C.F.R. §§ 404.1527(e); 404.1513a(b)(1); See 82 Fed. Reg. at 15,263 (clarifying that the new final rules only apply to claims filed on or after March 27, 2017). In any event, Godsey's arguments are unavailing no matter which regulation applies, since both the old and new standards require ALJs to assess whether medical opinion evidence is consistent with the record. *See*

20 C.F.R. 404.1520c(c)(2) (new standard, instructing ALJs to consider the consistency of a medical opinion); 20 C.F.R. § 404.1527(c)(4) (old standard, stating that "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")

Under "[t]he old regulatory regime," ALJs must give weight to a medical opinion based on "a hierarchy of medical opinions and . . . assign [ ] evidentiary weight to each medical opinion contained in the record by considering a laundry list of factors." *Hood v. Comm'r, Soc. Sec. Admin.*, 2023 WL 5917406, at *3 (N.D. Ala. 2023). Even so, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006).

Here, the ALJ "state[d] with particularity the weight [given] to different medical opinions and the reasons why." *Id.* The ALJ specified that Dr. Chastain's opinion was given little evidentiary weight and explained the numerous inconsistencies between Dr. Chastain's findings and other medical evidence in the record. (Doc. 8-3 at 21). Not only that, but because "his opinion was provided in May 2019," nearly three years before the ALJ conducted a hearing, "[Dr. Chastain] did not have the opportunity to review evidence available at the hearing level." (*Id.*)

Ultimately, "the task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor." *Moore v.*

14

*Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (cleaned up). So long as the ALJ's decision is supported by substantial evidence, as it was here, the decision must be affirmed.

## III.   CONCLUSION

Because the Commissioner's decision was supported by substantial evidence, and Godsey has demonstrated no error in the decision, the Court **AFFIRMS** the decision and **DISMISSES** this case **WITH PREJUDICE**. The Court will enter a final judgment separately.

**DONE** and **ORDERED** November 22, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE